## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

JAY FOLSE,

                    Plaintiff,

v.                                          CIVIL ACTION NO.    2:22-cv-00171

JOHN McCUSKEY JR., et al.,

                    Defendants.

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Plaintiff Jay Folse ("Plaintiff" or "Mr. Folse") initiated this civil action on April 8, 2022, naming five Defendants associated with the West Virginia State Auditor's Office—John McCuskey ("McCuskey"), G. Russell Rollyson, Jr. ("Rollyson"), Lisa Hopkins ("Hopkins"), Stephen Connolly ("Connolly"), and Michael Nusbaum ("Nusbaum") (collectively, the "Auditor Defendants")—as well as two Defendants associated with the West Virginia Capitol Police—Kevin Foreman ("Foreman") and Wallace Looney ("Looney") (together, the "Police Defendants"), all of whom were named in both their individual and official capacities. (ECF No. 32.) Pending before the Court are six threshold motions filed by three of the Auditor Defendants: Hopkins, Connolly, and Nusbaum. First, each of the three Defendants filed, respectively, a motion to dismiss Plaintiff's claims against them pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure. (ECF Nos. 38; 42; 46.) In addition, Defendants Nusbaum, Connolly, and Hopkins each filed respective motions for more definite statement. (ECF Nos. 36; 40; 44.) For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that all six motions be **DENIED**.

## I.    BACKGROUND

Plaintiff, who is proceeding *pro se*, initiated this civil action on April 8, 2022. (ECF No. 1.) In response to a number of threshold motions filed by the named Defendants, Plaintiff—with leave of Court—filed an Amended Complaint, and the threshold motions were denied as moot, with leave to re-file in response to the Amended Complaint. (ECF Nos. 24; 25; 26; 31; 32.) In the Amended Complaint,[1] Plaintiff alleges that the Auditor Defendants and the Police Defendants—acting in concert—deprived him of his "constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and [committed the] state law [torts of] intentional infliction of emotional distress and economic damages." (ECF No. 32 at 1.) These allegations stem from interactions between Plaintiff and the Auditor Defendants in connection with Plaintiff's purchases of tax liens[2] from the West Virginia State Auditor's Office. It is undisputed that over the course of several years Plaintiff's relationship with the Auditor's Office broke down and became contentious.[3] *See generally id.* at ¶¶ 5-12,

---

[1] Plaintiff's original Complaint is substantively identical to the Amended Complaint, except that Plaintiff alleged an additional count for declaratory and injunctive relief  to the latter ("Count VI"). (ECF No. 32 at ¶¶ 139-147.)

[2] Plaintiff explained that he "attends tax sales r[un] by the State Auditor's office for his occupation," and that "[h]e purchased a significant number of properties which in the year 2021 amounted to nearly two hundred properties." (ECF No. 32 at ¶ 18.)

[3] Plaintiff contends in his Amended Complaint that Rollyson became angry after Plaintiff reported to Auditor McCuskey that he suspected Rollyson of "condon[ing] and encourag[ing]" fraudulent service of process in connection with tax-deed sales. (ECF No. 32 at ¶¶ 27-35.)

16-42. Ultimately, this breakdown culminated in Defendant Rollyson's decision to file a petition with the Magistrate Court of Kanawha County, West Virginia (the "Kanawha Magistrate Court") for the issuance of a Personal Safety Order ("PSO") against Mr. Folse on August 12, 2021. (ECF No. 22-3.) Plaintiff alleges that "the Defendants collectively conspired to file for a personal safety order for the improper purpose to exclude the Plaintiff from tax sales, to bar him from obtaining tax deeds to properties he already purchased, and to put him in a catch 22 situation where he would be forced to either violate a personal safety order or lose his investment of hundreds of thousands of dollars." (ECF No. 32 at ¶ 43.)

Upon filing the petition for a PSO, Rollyson argued to the Kanawha Magistrate Court that the PSO was necessary because Plaintiff made "repeated credible threats of bodily injury[.]" (ECF No. 22-3 at 2.) The Kanawha Magistrate Court granted the PSO on August 12, 2021. *See id.* According to Plaintiff, "[p]revious to the PSO being issued, the Defendants had asked the Plaintiff to come in for a meeting at which they would discuss how to obtain tax deeds that were being refused," but that "[i]nstead of having that meeting as promised, they served him with the PSO." (ECF No. 32 at ¶ 49.)

Though Rollyson was listed as the protected person on the PSO, it ordered broadly that Plaintiff "shall not have verbal contact with the WVSAO *or the General Counsel,*" and that instead "[a]ll communication shall be via email or USPS." (ECF No. 22-3 at 2.) Additionally, the PSO ordered Plaintiff to "refrain from contacting, attempting to contact, or harassing" Rollyson, "directly or indirectly, or through third part[ties]," and to stay sway from Rollyson's "place of employment," among other things. *Id.* at 2-3. The PSO stated that it would "remain in effect until the 20th day of August, 2022," the maximum under West Virginia statute. *Id.* at 3. While Plaintiff

appealed the Magistrate Court's issuance of the PSO to the Kanawha County Circuit Court, the Circuit Judge affirmed the Magistrate's decision after Plaintiff failed to appear for a scheduled hearing. (ECF No. 56-1 at 3.) Plaintiff appealed the Circuit Court's decision to the West Virginia Supreme Court of Appeals, but the lower court's ruling was affirmed by the Supreme Court of Appeals on December 13, 2022. *Id.* at 4. The PSO expired pursuant to its terms on August 20, 2022.

Plaintiff's Amended Complaint alleged that the PSO "was granted based on numerous falsehoods and false affidavits . . . includ[ing] that the Plaintiff had recently started calling and yelling, using profanity, [accusing] the state auditor [of] treason, and call[ing] twenty-seven times in one day." (ECF No. 32 at 48.) Plaintiff alleged that, "[i]n actuality, the Plaintiff was the subject of verbal abuse and harassment from the Defendants," and that Plaintiff's "phone calls were only in an attempt to try and reach the Defendants" to inquire "how to obtain tax deeds to properties and avoid litigation." *Id.*

According to Plaintiff, on October 19, 2021, Defendant Looney, "a Sergeant with the Capitol Police,[4] filled out and signed a criminal complaint" charging Plaintiff with violating the PSO. *Id.* at ¶ 50. Based upon Looney's submission, the Kanawha Magistrate Court found that there was probable cause and issued the criminal complaint, which directed that a warrant be issued for Plaintiff's arrest. *Id.* at ¶¶ 51-53. Plaintiff alleges that "[t]he factual basis for the criminal charge" was comprised of actions which "are clearly protected by the First Amendment [to] the United States Constitution and are protected free speech." *Id.* ¶ 59. The Amended Complaint alleges that "[t]he criminal complaint was without probable cause and brought as a retaliatory action in response to

---

[4] It is undisputed that the Capitol Police, officially titled the "Division of Protective Services," is a law enforcement agency pursuant to W. Va. Code §§ 15-2D-1 *et seq*. Further, Defendant Foreman is the Director of the Capitol Police and supervisor of Defendant Looney.

the Plaintiff filing lawsuits [against McCuskey and Rollyson] and criticizing the State Auditor on Facebook." *Id.* ¶ 60. Plaintiff alleges that the Magistrate who issued the complaint is a personal friend of Auditor McCuskey, and that their friendship "improperly influenced the criminal case and determination of probable cause." *Id.* at ¶ 59. Plaintiff alleged he was subsequently arrested at a tax auction sale in Marion County, West Virginia, and that the Marion County Magistrate refused to allow him to post bond. *Id.* ¶ 54-55. As a result, Plaintiff "was held in the North Central Regional Jail in a cell with fifteen to twenty other men." *Id.* at ¶ 56.

Based on these allegations, Plaintiff's Amended Complaint asserted six counts against all the named Defendants. In Count I, Plaintiff asserted a claim pursuant to 42 U.S.C. § 1983 for false arrest in violation of the Fourth Amendment. *Id.* at ¶¶ 71-83. According to Plaintiff:

> Each of the Defendants acted individually and collectively under the color of state law to cause the Plaintiff to suffer a false arrest which was without probable cause and in retaliation for [Plaintiff's] First Amendment protected activities. Specifically, Defendant Looney authored, signed, and presented the criminal complaint to Magistrate Brent Hall. Upon information and belief, the other Defendants either acted in a concerted effort to conjure up this plot which led to the false arrest or directed Defendant Looney to author and present the criminal complaint.

*Id.* ¶ 75-77. Plaintiff added that "[t]he criminal complaint authored by the Defendants includes numerous falsehoods and misrepresentations," including that Plaintiff made "repeated threats and harassment" to Rollyson, that the Plaintiff violated the PSO by criticizing Auditor McCuskey, who was not listed as a protected person on the PSO, and by misleadingly characterizing the Plaintiff's email communications as "harassing." *Id.* ¶ 80-82.

Similarly, in Count II of the Amended Complaint, Plaintiff asserted a claim pursuant to 42 U.S.C. § 1983 for retaliatory arrest and retaliatory prosecution in violation of the Fourth Amendment. *Id.* ¶¶ 84-104. Plaintiff alleged that "[e]ach of the Defendants acted individually and collectively under the color of state law to cause the Plaintiff to suffer a retaliatory arrest which was without probable cause and in retaliation for [Plaintiff's] First Amendment protected activities." *Id.* ¶ 86. Further, Plaintiff alleged that "[e]ach of the Defendants acted to collectively conjure up the retaliatory arrest plot," which Plaintiff alleged was personally-motivated and "was intended to have a chilling effect on the Plaintiff's First Amendment rights and to discourage him from filing more lawsuits and criticizing the State Auditor, John McCuskey, on Facebook." *Id.* at ¶ 87.

In Count III, Plaintiff asserted a claim pursuant to 42 U.S.C. § 1983 for malicious prosecution in violation of the Fourth Amendment. *Id.* ¶¶ 105-114. Plaintiff alleged that the criminal complaint and subsequent prosecution "resulted in the Plaintiff being held in jail in a pretrial detention unsupported by probable cause," but that his prosecution "ended without a conviction when it was voluntarily dismissed by the Kanawha County prosecutor." *Id.* ¶¶ 108-111. Furthermore, Plaintiff alleged that "[e]ach of the Defendants acted individually and collectively under the color of state law to cause the Plaintiff to suffer a malicious prosecution which was without probable cause and in retaliation for First Amendment protected activities." *Id.* ¶ 112. According to Plaintiff, "[t]he Defendants conspired and conjured up the plot to have an arrest warrant issued for the Plaintiff that they knew was unsupported by probable cause," and that, "[s]pecifically, Defendant Looney was the individual defendant who authored, signed, and presented that warrant." *Id.* ¶¶ 113-114.

Finally, Plaintiff's Amended Complaint asserted a tort claim for Intentional Infliction of Emotional Distress (Count IV), and a claim for Economic Damages (Count V), under West Virginia law, as well as a claim for declaratory and injunctive Relief against Defendants. (*See* ECF No. 32.) With the exception of Count VI, which Plaintiff asserted against the Defendants in their Official Capacities only, all of Plaintiff's claims are asserted against the Defendants in both their official and individual capacities. *See id.*

## II.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *Glessner v. Chardan, LLC*, 22-cv-3333, 2023 WL 4351331, at *2 (D. Md. July 5, 2023) (citing *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v.Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). By filing a motion pursuant to Rule 12(b)(6), a defendant asserts that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) is to ensure a plaintiff's complaint provides the defendant with "fair notice" of the plaintiff's claims and the "grounds" for plaintiff's alleged entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6) under this standard, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). Under the *Twombly* plausibility standard, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions

drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Finally, federal courts reviewing a 12(b)(6) motion may take judicial notice of matters of public record, including court filings, and may consider documents incorporated into a complaint by reference without converting the motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

## III.    DISCUSSION

Three of the five Auditor Defendants—Hopkins, Connolly, and Nusbaum—each filed a substantively-identical motion to dismiss Plaintiff's claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 38; 42; 46.) On exactly the same basis, the motions alternatively seek an order requiring Plaintiff to file a more definite statement pursuant to Rule 12(e).[5] (ECF Nos. 39 at 4; 43 at 4; 47 at 4.) Hopkins, Connolly, and Nusbaum each argued in their respective motions to dismiss that Plaintiff's

---

[5] In addition, Defendants Nusbaum, Connolly, and Hopkins each filed a separate motion for more definite statement. (ECF Nos. 36; 40; 44.) Therein, these Defendants seek an order requiring Plaintiff to provide a more definite statement; however, the motions for more definite statement fail to cite to *any* legal authority, and instead merely rely upon precisely the same arguments set forth in the motions to dismiss. (*Compare* ECF Nos. 38; 42; 46, *with* ECF Nos. 36; 40; 44.) The undersigned **FINDS** that the motions for more definite statement are merely duplicative of the alternative relief sought in the motions to dismiss, and lend nothing substantive to Defendants' arguments. Accordingly, the undersigned respectfully **RECOMMENDS** that Defendants' duplicative motions for more definite statement (ECF Nos. 36; 40; 44) be denied as moot.

Amended Complaint merely asserted general, conclusory allegations that *all* of the named Defendants, under color of state law, engaged in a conspiracy to retaliate against the Plaintiff in violation of his constitutional rights. (ECF Nos. 39 at 2; 43 at 2; 47 at 2 (citing ECF No. 32 ¶ 1).) Hopkins, Connolly, and Nusbaum emphasized that, aside from such blanket, conclusory allegations of conspiracy, Plaintiff's Amended Complaint failed to make any substantive allegation—legal or factual—with respect to the three of them. *See id*. In support of their argument, Hopkins, Connolly, and Nusbaum pointed out that the full extent of allegations specifically directed toward them in the Amended Complaint is limited to a single statement that they are employed as General Counsel by the State Auditor, along with their alleged place of residence within West Virginia.[6] (ECF No. 32 at ¶¶ 9, 10, 11.)

Based upon the paucity of allegations explicitly naming Hopkins, Connolly, or Nusbaum, they argued that Plaintiff's Amended Complaint failed to allege with sufficient specificity what act or omission by these three Defendants allegedly violated Plaintiff's constitutional rights. (ECF Nos. 39 at 2; 43 at 2; 47 at 2.) As a result, Hopkins, Connolly, and Nusbaum concluded that the Amended Complaint failed to adequately notify them "why exactly [they are] being sued," aside from their mere status as "General Counsel for, and an employee of, the West Virginia State Auditor's Office." (ECF Nos. 39 at 2-3; 43 at

---

[6] The subject allegations in the Amended Complaint stated as follows:

Lisa Hopkins is an employee of the State Auditor with the title of General Counsel. She is a resident of Charleston, West Virginia.

Stephen Connolly is an employee of the State Auditor with the title of General Counsel. He is a resident of Hurricane, West Virginia.

Michael Nusbaum is an employee of the State Auditor with the title of General Counsel. He is a resident of South Charleston, West Virginia.

(ECF No. 32 at ¶¶ 9, 10, 11.)

2-3; 47 at 2-3.) Thus, with respect to Plaintiff's claims against them, Hopkins, Connolly, and Nusbaum argued that the Amended Complaint fell short of the plausibility standard set forth in *Twombly*, 550 U.S. at 570. (ECF Nos. 39 at 4; 43 at 4; 47 at 4.) Hopkins, Connolly, and Nusbaum's subject motions therefore requested an order dismissing them from this civil action. *Id.* For precisely the same reasons, they requested in the alternative that the Court require Plaintiff "to file a more definite statement of claims pursuant to Rule 12(e) of the Federal Rules of Civil Procedure." *Id.*

In response, Plaintiff pointed out that the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure does not apply to civil-rights claims asserted under 42 U.S.C. § 1983. (ECF No. 53 at 4-5 (citing *Leatherman v. Tarrant Co.*, 507 U.S. 163 (1993); *Twombly*, 550 U.S. 544).) Plaintiff asserted that his Amended Complaint not only comported with, but exceeded, the pleading standard set forth in Rule 8(a)(2). (ECF No. 53 at 6.) Additionally, Plaintiff highlighted the allegations in his Amended Complaint that all the Defendants collectively conspired to "file for a personal safety order," and then to bring about Plaintiff's arrest "over a 'sham' criminal charge of violating a personal safety order," without probable cause, "in [a] 'retaliation plot' conjured up by the named Defendants" in response to Plaintiff's "First Amendment protected activities." *Id.* at 6-7. While he did not make specific allegations regarding Hopkins's, Connolly's, or Nusbaum's specific roles in the alleged conspiracy, Plaintiff explained that "the thirty-page complaint . . . provides a significant amount" of factual allegations setting forth the object of the alleged conspiracy and specific steps taken to carry it out. *Id.* at 7. Based upon these allegations, Plaintiff concluded that the Amended Complaint set forth a plausible claim for relief and sufficiently notified the Defendants "why they are being sued." *Id.* at 9.

The Court agrees with Plaintiff that § 1983 claims are generally not subject to the heightened pleading standard set forth in Rule 9(b) in this context, absent a claim of fraud. Instead—as Defendants do not dispute—Rule 8 applies. Relevant here, Rule 8(a)(2) provides that, to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court decided that the standard for a Rule 8(a)(2) showing is one of plausibility. *See Twombly*, 550 U.S. 544; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Although a "plaintiff need not plead the evidentiary standard for proving h[is] claim," the Fourth Circuit explained that under the plausibility standard set forth by the Supreme Court in *Twombly* and *Iqbal*, a plaintiff "may no longer rely on the mere possibility that []he could later establish h[is] claim." *Burgess v. Baltimore Police Dep't*, 15-cv-0834, 2016 WL 795975, at *4 (D. Md. Mar. 1, 2016); *accord McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 854 (4th Cir. 2015) (discussing *Swierkiewicz* in light of the plausibility and specificity requirements set forth in *Twombly* and *Iqbal*). This does not equate, however, to a requirement that a plaintiff plead a § 1983 claim of conspiracy with particularity. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) ("Rule 9(b) has a short list of matters (such as fraud) that must be pleaded with particularity; conspiracy is not among them."). All that must be shown for a § 1983 conspiracy claim is that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in deprivation of a constitutional right[.]" *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)); *see also Bumgardner v. Taylor*, 18-cv-1438, 2019 WL 1411059, at *4 (D. Md. Mar. 28, 2019). "Underlying this requirement is the rationale that

information regarding the conspiracy is often solely in the hands of the conspirators." Christopher M. Fairman, *The Myth of Notice Pleading*, 45 Ariz. L. Rev. 987, 1003 (2003).

Applying this standard, the U.S. District Court for the Western District of Virginia granted a defendant's motion to dismiss pursuant to Rule 12(b)(6) in *Davis v. Cty. of Amherst*, 6:07-cv-17, 2008 WL 591253, at *3 (W.D. Va. Mar. 3, 2008). The *Davis* plaintiff brought a claim pursuant to 42 U.S.C. § 1983 against a sheriff's department as well as a sheriff, in his individual capacity, for conspiracy to violate the plaintiff's civil rights. *Id.* at *1-2. The sheriff challenged the sufficiency of the *Davis* plaintiff's complaint because the only allegation that could have pertained to him was a single sentence which stated broadly that "[a]ll defendants took some overt act in furtherance of the conspiracy[;] [n]amely each defendant actually participated in the use of excessive force . . . or acquiesced in the actions taken and attempted to cover up the actions taken." *Id.* at *3. The *Davis* court characterized this allegation as "a bald legal conclusion that [the sheriff] attempted a cover-up with nothing further." *Id.* The court explained that the plaintiff was required, "at the least, [to] allege some facts indicative of a cover-up." *Id.* The court concluded that the plaintiff's complaint "has not identified any specific conduct that could form the basis for any of the elements of a § 1983 conspiracy." *Id.* at *4. Accordingly, the sheriff's motion to dismiss was granted.

The U.S. District Court for the District of Maryland applied this same standard but reached a different result in *Burgess*, 2016 WL 795975, at *3-4. In *Burgess*, a group of police defendants moved to dismiss a plaintiff's § 1983 claim of conspiracy to deprive him of his constitutional rights. *Id.* The police officers in *Burgess* challenged the sufficiency of the plaintiff's complaint due to the plaintiff's use of "group pleading," which they argued rendered the complaint "legally insufficient" as a matter of law. *Id.* at *6, *10. The police

officers argued that, by referring to all the defendants—including the police officers—collectively in a single group throughout the complaint, the plaintiff "prevent[ed] the individual officers from determining the precise scope of the charges against them." *Id.* at *10. Rejecting the police officers' argument, the *Burgess* court explained that the pleading standard under *Twombly* and *Iqbal* did not "demand that a plaintiff possess full and complete knowledge of the defendants' alleged actions[;] [r]ather, a plaintiff need only submit facts sufficient to plead a plausible claim for relief." *Id.* The court emphasized that the complaint did allege specific facts indicative of a conspiracy, and that the plaintiff's conspiracy allegations were intentionally directed at the group of named defendants—rather than a speculative "shotgun" tactic to name every individual who could possibly have been involved. *Id.* In this context, the *Burgess* court stated that "it is the very purpose of discovery to establish the presence or absence of facts with which the plaintiff intends to *prove* his claim." *Id.* (emphasis in original). The *Burgess* court concluded that, "[a]t this early stage in the litigation, [the plaintiff's] allegations regarding the [defendant police officers] are sufficient." *Id.* Accordingly, the police officers' motion to dismiss was denied.

While the *Davis* and *Burgess* courts reached different rulings, they are not inconsistent with one another; rather, they delineate the line between sufficient and deficient conspiracy allegations in this context. The *Davis* court found that the plaintiff's complaint was insufficient because the plaintiff broadly alleged that a conspiracy to violate the plaintiff's rights existed, without also identifying any specific conduct that could form the basis for the conspiracy. The *Burgess* plaintiff, on the other hand, did allege specific facts that could form the basis for the conspiracy. It was clear from the complaints in both *Davis* and *Burgess* that the plaintiffs lacked knowledge about all the

co-conspirator-defendants' precise actions, but the *Burgess* plaintiff's specifical factual allegations of overt acts in furtherance of the conspiracy was detailed enough for the defendants to determine the precise scope of the charges against them.

While it is a close call, Plaintiff's Amended Complaint in the case *sub judice* is more akin to that in *Burgess*. Unlike the *Davis* complaint—which only made a conclusory assertion that there was a "cover-up" conspiracy, without any supporting factual allegations indicative of a cover-up—here, Plaintiff's Amended Complaint specifically alleged facts that could form the basis for the alleged conspiracy to "file for a personal safety order," and then to bring about Plaintiff's arrest "over a 'sham' criminal charge of violating a personal safety order," without probable cause, "in [a] 'retaliation plot' conjured up by the named Defendants" in response to Plaintiff's "First Amendment protected activities." Like the *Burgess* plaintiff, in the instant matter Plaintiff lacks full and complete knowledge of each Defendant's specific actions at this early stage of the litigation, but his Amended Complaint was detailed and specific enough to notify the Defendants that they are alleged to have shared a conspiratorial objective—to file for a personal safety order against Plaintiff, and then to bring about Plaintiff's arrest over a sham criminal charge of violating the order—and that there was at least one overt act in furtherance of the conspiracy—Officer Looney's submission of a false criminal complaint to the Kanawha County Magistrate. (*See* ECF No. 53 at 6.) The undersigned **FINDS** that these allegations state a plausible claim for relief under § 1983 and are sufficient for the Defendants to determine the precise scope of the charges against them.

The Court also finds it significant that, ironically, Defendants' two-paragraph argument in support of their motions merely cited to general language regarding the Rule 8(a)(2) standard pulled from *Twombly* and one Fourth Circuit case—*Van Leer v.*

*Deutsche Bank Sec., Inc.*, 479 Fed. App'x 475, 476 (4th Cir. 2012)—without specifying how those cases applied to the circumstances at hand. (ECF Nos. 39 at 4; 43 at 4; 47 at 4.) Defendants simply reiterated the general principles that it is insufficient to provide only "naked assertions devoid of further factual enhancement" or "a sheer possibility that a defendant has acted unlawfully; that "the Plaintiff's claims must cross the line from conceivable to plausible," and that a plaintiff "must do more than provide labels and conclusions—a formulaic recitation of the elements will not do." *Id.* Without elaborating, Defendants then concluded that "the Plaintiff's Amended Complaint lacks any facts supporting any cause of action against" them. (ECF Nos. 39 at 4; 43 at 4; 47 at 4.)

Similarly, Defendant's statement of "Applicable Rules of Civil Procedure" in the preceding section of their supporting memoranda merely listed—without analysis, application, or explanation—a string cite of authority regarding the 12(b)(6) standard in general. (ECF Nos. 39 at 3-4; 43 at 3-4; 47 at 3-4 (citing *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993); *Glenn Coal Co. v. Dickinson Fuel Co.*, 72 F.2d 885, 891 (4th Cir. 1934); *Henegar v. Sears, Roebuck & Co.*, 965 F. Supp. 833 (N.D. W. Va. 1997); *L. S. Good & Co. v. H. Daroff & Sons, Inc.*, 263 F. Supp. 635, 646 (N.D. W. Va. 1967); *Jackson v. Nelson*, 405 F.2d 872, 873 (9th Cir. 1968) (per curiam); *Sutton v. E. Viavi Co.*, 138 F.2d 959, 960 (7th Cir. 1943); *Stewart v. Hevelone*, 283 F. Supp. 842, 846 (D. Neb. 1968); *Huey v. Barloga*, 277 F. Supp. 864, 871 (N.D. Ill. 1967)).) All of this remaining authority *significantly* predates the Supreme Court's establishment of the plausibility standard in *Twombly* and *Iqbal. See id*. Further, as discussed below, the applicability of this authority to the circumstances of this case is questionable; without any explanation from Defendants, the Court is merely left to speculate what Defendants intended to signify by referring to these disparate cases.

16

The first group of cases listed in Defendants' string cite involved conspiracy-related claims, but in applicable contexts. First is *Huey v. Barloga*, 277 F. Supp. 864, 869 (N.D. Ill. 1967). In *Huey*, the father of a black college student brought suit pursuant to, *inter alia*, 42 U.S.C. § 1983 against city employees after his son was stopped en route to a job interview and brutally murdered by a gang of white men. *Id*. at 867. Granting the defendants' motion to dismiss the § 1983 claim, the U.S. District Court for the District of Illinois explained that an alleged conspiracy "is incomplete without overt action by a conspirator." *Id*. The father's complaint alleged that the defendants were aware of the possibility of "racial disorder" but "neglected to prevent or to aid in preventing the attack[.]" *Id*. at 873. The *Huey* court found that the complaint was too conclusory because it made "only general allegations that the defendants could have prevented the injury . . . unsupported by any factual statements" indicating that one of the conspirators committed any specific, overt act in furtherance of the conspiracy. *Id*. at 871-73. As explained above, Plaintiff asserted specific factual allegations of overt acts taken by the alleged co-conspirators of Hopkins, Connolly, and Nusbaum, including Officer Looney's alleged submission of a criminal complaint to the Kanawha County Magistrate. Thus, *Huey* is distinguishable.

The remaining conspiracy-related cases cited by Hopkins, Connolly, and Nusbaum are all distinguishable because, unlike the case at hand, these cases arose from business disputes between two private parties, and involved statutory claims with distinct pleading requirements—namely, the Sherman Anti-Trust Act and the Racketeer Influenced and Corrupt Organizations ("RICO") Act. The first of these is *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993), a case in which the parties were prescription-drug manufacturers. The allegations of conspiracy in *Mylan* were tied to a RICO claim, which

under the circumstances involved more complex pleading requirements pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *See id.* Thus, *Mylan* lends little insight to the Rule 8(a)(2) standard—which the parties do not dispute is the proper standard in the case *sub judice*.

The next of these cases is *L. S. Good & Co. v. H. Daroff & Sons, Inc.*, 263 F. Supp. 635, 646 (N.D. W. Va. 1967), wherein "[t]he sole issue . . . [wa]s whether a cause of action exist[ed] under the antitrust laws," and the court found that the plaintiff's complaint was legally implausible under the Anti-Trust Act.[7] *Id.* at 646-48. The *L. S. Good* plaintiff's complaint was also insufficient because it "charge[d] the defendant with engaging in" a conspiracy generally, without any supporting allegations of fact. *Id.* at 647. Those circumstances are clearly different than the case *sub judice*, where Plaintiff's Amended Complaint—though it left some details of the conspiracy to discovery—contained numerous, detailed supporting allegations of fact regarding the purported object of the conspiracy and the overt acts allegedly taken to carry out the conspiracy. (*See* ECF No. 32 at ¶¶ 43-70.)

Next is *Stewart v. Hevelone*, 283 F. Supp. 842, 846 (D. Neb. 1968). Like *L.S. Good*, *Stewart* involved a claim under the Sherman Anti-Trust Act arising from a business dispute. *Stewart*, 283 F. Supp. 842. The *Stewart* court found the complaint failed to state a claim under Sections 1 and 2 of the Sherman Act. *Id.* at 845-46. A Section 1 violation required two or more "independent business entities," but *Stewart's* complaint only named one business; likewise, a Section 2 violation required an effect on interstate

---

[7] Similarly, Defendants also cited *Glenn Coal Co. v. Dickinson Fuel Co.*, 72 F.2d 885, 891 (4th Cir. 1934), which bears no need for further elaboration as it merely echoes the issues discussed in *L.S. Good*. *See id.* at 887-888 ("A mere conspiracy with intent to violate the law while it may be the basis of a valid indictment under the criminal sanction of the Anti-Trust Act, does not give rise to a personal civil suit for damages.").

commerce, but *Stewart's* complaint did not make any allegations "set[ting] forth how the conduct complained of affect[ed] interstate commerce[.]" *Id.* Finally, the *Stewart* court merely mentioned in passing, without further elaboration, that the plaintiff's complaint "[wa]s replete with conclusionary allegations . . . [and] [h]opefully . . . will be corrected" with the filing of an amended pleading. *Id.* Just like *L.S. Good*, therefore, *Stewart* is largely irrelevant to the matter at hand aside from generally establishing that a plaintiff may not merely rely upon conclusory allegations.

The remaining cases listed in the Defendants' supporting memoranda did not involve the sufficiency of a plaintiff's conspiracy allegations at all. First, Defendants Hopkins, Connolly, and Nusbaum cited—without any analysis or further elaboration—to a Ninth Circuit case from 1968 in their motions. (ECF No. 39 at 3-4; 43 at 3-4; 47 at 3-4 (citing *Jackson v. Nelson*, 405 F.2d 872, 873 (9th Cir. 1968) (per curiam).) In *Jackson*, the plaintiff asserted a claim pursuant to 42 U.S.C. § 1983. *Id.* at 873-74. No information is available regarding the allegations in the complaint, aside from the Ninth Circuit's brief observation that its "examination of the complaint . . . reveal[ed] a series of broad conclusory statements unsupported, for the most part, by specific allegations of fact[,] [and] [i]n addition, the individual defendants are nowhere referred to in the pleadings, other than in the title to the action." *Id.* at 873-74. While Plaintiff's Amended Complaint in the case *sub judice* left the specific actions of Hopkins, Connolly, and Nusbaum to discovery, it did more than merely name them "in the title to the action" like the *Jackson* complaint. Rather, Plaintiff's Amended Complaint alleged the role of these three Defendants as counsel for the State Auditor's Office; further, as discussed above, Plaintiff set forth "specific allegations of fact" regarding overt steps purportedly taken by alleged co-conspirators in furtherance of the alleged conspiracy, sufficient for these Defendants

to determine the scope of Plaintiff's charges against them.[8] Additionally, despite its criticism of the plaintiff's allegations, following this analysis the *Jackson* court ultimately concluded that dismissal under Rule 12(b)(6) was improper. *See id.*

The applicability of another case listed by Defendants—*Henegar v. Sears, Roebuck & Co.*, 965 F. Supp. 833 (N.D. W. Va. 1997)—is even more questionable, not only because of the disparate type of claim at issue, but also because the *Henegar* defendant challenged the sufficiency of the complaint on a different basis than the motions to dismiss filed by Defendants Hopkins, Connolly, and Nusbaum. In *Henegar*, the U.S. District Court for the Northern District of West Virginia took up a 12(b)(6) motion to dismiss on the issue of "whether a plaintiff has a cause of action for religious discrimination under the [West Virginia Human Rights] Act when she claim[ed] she was passed over" for a job promotion at Sears because of her manager's beliefs. *Id.* at 836. The defendant employer moved to dismiss the plaintiff's religious-discrimination claim on the grounds that her complaint "fail[ed] to specifically identify her former supervisor's religion[.]" The *Henegar* court rejected the defendant's argument, finding that "the defendant d[id] not challenge the legal adequacy of plaintiff's complaint, but rather contests the accuracy of the facts which underlie it." *Id.* at 837. Accordingly, the *Henegar* court denied the defendant's motion in relevant part, finding that the plaintiff's complaint sufficiently "state[d] a cause of action under the Act." *Id.* at 838. Lastly, for the same reasons, the Defendants' citation to *Sutton*

---

[8] For the same reasons, the *Van Leer* case to which the Defendants cited in the argument portion of their memoranda is distinguishable from the case at hand. *Van Leer*, 479 Fed. App'x at 480. The *Van Leer* matter arose from a business dispute between two private parties. *See id.* The plaintiff in the *Van Leer* case alleged that the defendant used confidential information provided by the plaintiff to its own advantage in violation of its duty to the plaintiff; however, the Fourth Circuit explained that the plaintiff failed to "provide any gloss on these bare assertions," such as a description of the confidential information plaintiff allegedly provided to the defendant, or an allegation describing how the defendant allegedly used that information for its own advantage. *Id.*

*v. E. Viavi Co.*, 138 F.2d 959, 960 (7th Cir. 1943), which addressed the pleading standard in the specific context of an action for misapplication of trust funds, is likewise ineffectual. *Id.* at 960.

In summary, the motions to dismiss and supporting memoranda made no effort to analyze, compare, or even discuss the applicability of any legal authority—either within or outside the Fourth Circuit—where dismissal was found to be proper under similar circumstances. (*See* ECF Nos. 36; 38; 40; 42; 44; 46.) Defendants' lack of argument, analysis, and legal support for their motions is significant because "all federal courts are in agreement that the burden is on the moving party on a motion to dismiss to prove that no legally cognizable claim for relief exists . . . [and] [t]hus, [a] [d]efendant[] must show why [the plaintiff's] . . . complaint fail[ed] to satisfy this requisite pleading standard" of plausibility. *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 762 (D. Md. 2015). As demonstrated above, Defendants Hopkins, Connolly, and Nusbaum—by merely listing general principles regarding the Rule 8(a)(2) pleading standard and generally characterizing Plaintiff's allegations as insufficient, without more—have clearly not met that burden. As this Court has explained, "a district court does not assume the role of an advocate to construct arguments or theories for a *pro se* plaintiff"—let alone parties like Defendants Hopkins, Connolly, and Nusbaum, who are represented by counsel. *Siberius v. Am. Pub. Univ. Sys., Inc.*, 2:18-cv-1125, 2019 WL 4409714, at *1 (S.D. W. Va. Sept. 13, 2019), *aff'd*, 803 Fed. App'x 722 (4th Cir. 2020). *See also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (cautioning against "transform[ing] the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party"). "Judges are not like pigs, hunting for truffles buried in briefs." *Id.* at *1 (citing *United States v. Dunkel*, 927 F.2d

955, 956 (7th Cir. 1991)). Thus, for the same reason that "the Court need not comb through the [*pro se* Plaintiff's Amended Complaint] looking for potential claim," neither is it a proper use of judicial resources for the Court to comb through Defendants' motion and supporting memoranda in search of a potential argument. *See id.*

In light of the foregoing, the undersigned **FINDS** that—at least at this early pleading stage of the litigation—the Amended Complaint sets forth a plausible claim for relief, and Defendants have not met their burden to show that dismissal is warranted.

Finally, for similar reasons Defendants' alternative request for an order requiring Plaintiff to provide a more definite statement as it pertains to them, lacks merit under the circumstances. Rule 12(e) of the Federal Rules of Civil Procedure provides that "[a] party may move for a more definite statement of a [complaint] . . . which is so vague and ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The Rule also requires, however, that "[t]he motion [for a more definite statement] must be made before filing a responsive pleading and must point out the defects complained of *and the details desired.*" *Id.* (emphasis added).

To illustrate, the U.S. District Court for the District of South Carolina's decision in *Derivium Cap., LLC v. Cathcart*, 2:07-cv-2992, 2008 WL 11370031, at *1 (D.S.C. June 17, 2008), is instructive. In *Derivium*, an adversary proceeding brought by a bankruptcy trustee, the trustee alleged in the complaint that the bankruptcy debtor created a "Ponzi scheme" to obtain proceeds of fraudulently-obtained stock. *Derivium*, 2:07-cv-2992, at ECF No. 1 ¶ 1. FRG—one of the named defendants—filed a motion for a more definite statement, in which it argued "that the allegations against it [we]re not specific enough to provide notice of the allegations or a sufficient opportunity to answer the complaint." *Id.* Specific to FRG, the complaint only alleged that the debtor made loans to FRG from

proceeds of the scheme, for no return consideration. *Id.* The complaint also alleged broadly as to all the named defendants that they "either actively and consciously participated in the design, implementation and/or cover-up of the scheme." *Id.* In its motion to dismiss, FRG argued that a more definite statement was warranted because "it is only specifically identified one time in the complaint." *Derivium*, 2008 WL 11370031, at *1. Denying FRG's motion, the *Derivium* court found it significant that—while the complaint did not provide detailed allegations regarding FRG's precise role in the scheme—the plaintiff provided detailed factual allegations regarding the alleged scheme itself "in a sixty-two page complaint" that alleged specific overt acts by the debtor in furtherance of the scheme. *Id.* The *Derivium* court found the complaint was sufficient under the heightened pleading standard set forth in Rule 9(b), and ruled that FRG "[wa]s not entitled to a more definite statement under Rule 12(e)." *Id.*

As discussed above, while Plaintiff's Amended Complaint—like the complaint in *Derivium*—did not provide detailed allegations regarding the precise role Defendants Hopkins, Connolly, and Nusbaum played in the alleged conspiracy to deprive Plaintiff of his constitutional rights, the Amended Complaint provided detailed factual allegations over thirty pages regarding specific overt acts taken by the alleged co-conspirators in furtherance of the Defendants' alleged scheme. In combination with the fact that Defendants failed to point out "the details desired" in the more definite statement contemplated in their motion, they are not entitled to a more definite statement under Rule 12(e).

Defendants Hopkins, Connolly, and Nusbaum failed to demonstrate that either dismissal, or, alternatively, a more definite statement, are proper on the basis raised in

their motions and supporting memoranda; therefore, the undersigned respectfully **RECOMMENDS** that their motions to dismiss (ECF Nos. 38; 42; 46) be **DENIED**.

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** the motions to dismiss filed by Defendants Hopkins, Connolly, and Nusbaum (ECF Nos. 38; 42; 46), and **DENY** as moot their duplicative motions for more definite statement (ECF Nos. 36; 40; 44).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals.  *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing parties and Judge Copenhaver.

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation, transmit a copy to counsel of record via the Court's CM/ECF system, and mail a copy of the same to any *pro se* party at his or her address of record.

ENTER:      August 8, 2023

Dwane L. Tinsley
United States Magistrate Judge