## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

JAY FOLSE,

               Plaintiff,

v.                                   CIVIL ACTION NO.    2:22-cv-00171

JOHN McCUSKEY JR., et al.,

               Defendants.

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Plaintiff Jay Folse ("Plaintiff" or "Mr. Folse") initiated this civil action on April 8, 2022, naming five Defendants associated with the West Virginia State Auditor's Office—John McCuskey ("McCuskey"), G. Russell Rollyson, Jr. ("Rollyson"), Lisa Hopkins ("Hopkins"), Stephen Connolly ("Connolly"), and Michael Nusbaum ("Nusbaum") (collectively, the "Auditor Defendants")—as well as two Defendants associated with the West Virginia Capitol Police—Kevin Foreman ("Foreman") and Wallace Looney ("Looney") (together, the "Police Defendants"), all of whom were named in both their individual and official capacities. (ECF No. 32.) Pending before the Court are three motions to dismiss—one filed by the Police Defendants (ECF No. 34), and two filed by the Auditor Defendants (ECF Nos. 48; 50). For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the first of the Auditor

Defendants' motions (ECF No. 48) be **GRANTED**, and that the remaining two motions (ECF Nos. 34; 50) each be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

The factual allegations at issue in this case are detailed at length in the undersigned's August 8, 2023 PF&R (ECF No. 57), which is incorporated herein by reference, and do not need to be repeated.

Before the Court remain three threshold motions to dismiss, each challenging the sufficiency of Plaintiff's Amended Complaint. First, the Police Defendants—Foreman and Looney—filed their Renewed Motion to Dismiss on October 6, 2022. (ECF No. 34.) Therein, the Police Defendants raised five arguments: first, that the § 1983 claims against them in their official capacities should be dismissed, as an "official" is not a "person" within the scope of § 1983; second, that qualified immunity bars Plaintiff from seeking relief under § 1983 against them; third, that all of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6); and finally, that Plaintiff's request for prospective declaratory and injunctive relief against them in their official capacities should be dismissed because there is no ongoing violation of federal law. (ECF No. 35 at 5-12.) Similarly, the Auditor Defendants filed two motions to dismiss on October 6, 2022. (ECF Nos. 48; 50.) In their first motion to dismiss, the Auditor Defendants—just like the Police Defendants—argued for dismissal of Plaintiff's § 1983 claims against them in their official capacities on the grounds that "State officials sued in their official capacities, are not a 'person' subject to suit pursuant to 42 U.S.C. § 1983." (ECF No. 49 at 5.)

Additionally, the Auditor Defendants sought dismissal of all Plaintiff's claims pursuant to Rule 12(b)(6).[1] (ECF Nos. 50; 51.)

On October 20, 2022 Plaintiff filed a timely Response Memorandum in Opposition to both the Police Defendants' and the Auditor Defendants' motions to dismiss, in which he jointly responded to both sets of Defendants' arguments raised in their threshold motions. (ECF No. 53.) On October 27, 2022, the Auditor Defendants and Police Defendants filed Reply memoranda in support of their motions. (ECF Nos. 54; 55.) Accordingly, the motions are now ripe for adjudication.

## II.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *Glessner v. Chardan, LLC*, 22-cv-3333, 2023 WL 4351331, at *2 (D. Md. July 5, 2023) (citing *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v.Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). By filing a motion pursuant to Rule 12(b)(6), a defendant asserts that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

---

[1] Although the Auditor Defendants submitted exhibits in support (ECF Nos. 51-1; 51-2; 51-3), the Defendants' threshold motions are evaluated herein only as motions to dismiss, without converting them into summary-judgment motions. Accordingly, with the exception of the Personal Safety Order ("PSO"), which is integral and incorporated into Plaintiff's Amended Complaint, any documents attached to the parties' briefs were not considered.

R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) is to ensure a plaintiff's complaint provides the defendant with "fair notice" of the plaintiff's claims and the "grounds" for plaintiff's alleged entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6) under this standard, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). Under the *Twombly* plausibility standard, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit*

*Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Finally, federal courts reviewing a 12(b)(6) motion may take judicial notice of matters of public record, including court filings, and may consider documents incorporated into a complaint by reference without converting the motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

## III.    DISCUSSION

Together, the Defendants' motions to dismiss raise four central issues. First, the Police Defendants seek dismissal of Plaintiff's § 1983 claims against them in their individual capacities—as set forth in Counts I, II, and III of the Amended Complaint—on the grounds that qualified immunity protects them from suit. (ECF No. 34.) Second, the Police Defendants and the Auditor Defendants both seek dismissal of Plaintiff's § 1983 claims against them in their official capacities—as set forth in Counts I, II, III, and VI of the Amended Complaint—on the grounds that official-capacity claims are improper under the circumstances. (ECF Nos. 34; 50.) Third, the Police Defendants and the Auditor

Defendants both seek dismissal of Plaintiff's § 1983 claims against them in their individual capacities—as set forth in Counts I, II, and III of the Amended Complaint—under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that Plaintiff failed to state a claim for relief. Fourth and finally, the Police Defendants and the Auditor Defendants both seek dismissal of Plaintiff's remaining state-law tort claims against them—as set forth in Counts IV and V of the Amended Complaint—under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that Plaintiff's legal and factual allegations are insufficient to state a plausible claim for relief.

### A. Qualified Immunity

The first issue is the Police Defendants' assertion that qualified immunity bars Plaintiff from asserting § 1983 claims against Foreman and Looney. (ECF Nos. 34; 35 at 5-8.) While this determination is context-dependent and calls for a highly fact-specific inquiry, in general terms "[q]ualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Davidson v. Rose*, 19 F.4th 626, 640 (4th Cir. 2021); *accord Hulbert v. Pope*, 70 F.4th 726, 732 (4th Cir. 2023). This defense from suit arose in response to concern that a public official could be unduly harassed or inhibited in doing his job if making a simple mistake could mean that he was personally liable for money damages. Qualified immunity is thus intended to grant state actors a "sphere of limited discretion" to provide them "breathing room to make reasonable but mistaken judgments" in the performance of their duties; as a result, qualified immunity essentially requires the dismissal of § 1983 claims against "all but the plainly incompetent or those who knowingly violate the law." *Hulbert*, 70 F.4th at 732

(citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Therefore, [the Police] Defendants are entitled to qualified immunity unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of [the Defendants'] conduct was clearly established at the time." *Garrett v. Clarke*, 21-1932, 2023 WL 4713754, at *2 (4th Cir. July 25, 2023) (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). The Fourth Circuit recently confirmed that "[i]n our Circuit, Defendants bear the burden of proving that the unlawfulness of their conduct was not clearly established." *Garrett*, 2023 WL 4713754, at *2 (citing *Stanton v. Elliott*, 25 F.4th 227, 233 n.5 (4th Cir. 2022).

The Police Defendants argued that qualified immunity applies because their actions "were not objectively unreasonable and did not violate any clearly established right" under the Fourth Amendment.[2] (ECF No. 35 at 5-6.) The Police Defendants contested Plaintiff's allegations that the Personal Safety Order ("PSO") and the criminal complaint were not supported by probable cause, arguing that Looney's investigation supported entry of the PSO, and that the criminal complaint was "based upon information that Plaintiff violated" the PSO. *Id.* at 6. Particularly where the Kanawha County Magistrate found that the criminal complaint demonstrated probable cause to arrest Plaintiff for violating the PSO, the Police Defendants concluded that "neither Officer Looney nor Director Foreman's actions, as alleged in the Amended Complaint, violated a clearly established constitutional right[.]" *Id.* at 5.

---

[2] Counts I and III of the Amended Complaint asserted § 1983 claims arising from Defendants' alleged violation of the Fourth Amendment. (ECF No. 32.) Count II, in contrast, asserted a § 1983 claim arising from Defendants' alleged violation of the First Amendment. The Police Defendants, however, did not raise the issue of qualified immunity in the context of the First Amendment; as a result, the undersigned **FINDS** that Defendants failed as a matter of law to establish that qualified immunity bars Plaintiff's claim against Looney and Foreman in Count II of the Amended Complaint. *Garrett*, 2023 WL 4713754, at *2.

Defendants' emphasis on the "arms-length" relationship with the PSO and criminal complaint portrays the parties' dispute as a simple disagreement over the existence of probable cause—a dispute that, according to the Police Defendants—was resolved by the findings of a neutral magistrate. *See id.* In reality, this argument sidestepped the central theme of Plaintiff's Amended Complaint—that the Defendants intentionally violated Plaintiff's constitutional rights by manufacturing probable cause. Specifically, the Police Defendants' argument ignored Plaintiff's allegations of conspiracy between the named Defendants and misconduct in furtherance of the conspiracy, by allegedly petitioning for a "sham" PSO and then falsely charging Plaintiff with violating its terms. Plaintiff alleged in detail in the Amended Complaint that the Defendants— including Looney, who allegedly authored, signed, and presented the criminal complaint to the Magistrate—knowingly conspired to effect the Plaintiff's arrest without probable cause—an unreasonable seizure under the Fourth Amendment—"in retaliation for  [his] First   Amendment protected activities" that were critical of the West Virginia State Auditor's Office. (*See* ECF No. 32.) Critically, Plaintiff further alleged that "[t]he criminal complaint authored by the Defendants include[d] numerous falsehoods and misrepresentations," including the false assertion Plaintiff made "repeated threats and harassment" to Rollyson, the inaccurate assertion that the Plaintiff violated the PSO by criticizing Auditor McCuskey on Facebook, and the misleading characterization of the Plaintiff's email communications as "harassing." *Id.* ¶¶ 80-82.

These allegations are significant, as a neutral magistrate's probable-cause finding generally "has a significant impact on" the question of a state actor's objective reasonableness, but it "does ***not*** shield officers who have deliberately supplied misleading information that influenced the [intermediary's] decision." *Jafary v. City of Beckley*,

5:20-cv-647, 2021 WL 1792139, at *5 (S.D. W. Va. May 5, 2021) (emphasis added). In *Jafary*, for example, police responded to the home of the plaintiff's nephew after receiving reports of a domestic disturbance; when the plaintiff raised her concern over the manner in which one of the police officers interrogated her nephew, the officer allegedly "advanced on her with his hand on his holstered gun and told her that he would arrest her for obstruction if she did not leave the room." *Id.* at *2. After the plaintiff complained to the officer's supervisor, the officer "wrote a narrative report of the incident and attached it to a criminal complaint against [the plaintiff] for misdemeanor obstruction[.]" *Id.* In her subsequent § 1983 suit in this Court, the *Jafary* plaintiff alleged that the officer's narrative "contained brazen lies so that [the officer] could manufacture probable cause to justify an arrest for obstruction," and that these "falsehoods were the reason for the magistrate's finding of probable cause." *Id.* The officers moved to dismiss, citing qualified immunity. *Id.* at *5.

Denying the officers' motion to dismiss on qualified immunity grounds, this Court in *Jafary* explained that the plaintiff's allegations, "if shown to be true, would render the officers liable under the Fourth Amendment" in satisfaction of the first prong of the qualified-immunity analysis. *Wesby*, 138 S. Ct. at 589. The *Jafary* court also found that the complaint satisfied the "clearly established" element of the second prong, as "[i]t is clearly established that a person may not be arrested without probable cause, just as it is clearly established that an officer may not make false statements to manufacture probable cause." *Jafary*, 2021 WL 1792139, at *6. The Court thus denied the officer's motion to dismiss, finding that qualified immunity was not appropriate "at this [initial] stage of the lawsuit." *Id.*

Here, Plaintiff asserted that the PSO and the criminal complaint were *not* supported by probable cause and instead a concerted "sham." (ECF No. 32 at ¶¶ 60, 75, 127.) Just as in *Jafary*, therefore, the plaintiff "allege[d] that [the officer's] falsehoods were the reason for the magistrate's finding of probable cause." *Jafary*, 2021 WL 1792139, at *5. The Police Defendants' disagreement in their response memorandum that "Defendants' complaints were based on probable cause" (ECF No. 35 at 6) merely signifies that the facts are in dispute; but at this stage of the litigation, the threshold issue of *pleadings*—not of proof—is in question. Taking Plaintiff's factual allegations as true and viewing them in the light most favorable to him—as the Court must do at this stage of the proceedings—it would be clear to any reasonable officer under the circumstances that making "falsehoods and misrepresentations" to obtain a warrant or to suppress unwanted speech was unlawful and did not support a finding of probable cause. *Wesby*, 138 S. Ct. at 590; *Jafary*, 2021 WL 1792139, at *5-6. *See also Ridpath v. Bd. of Govs.*, 447 F.3d 292, 306 (4th Cir. 2006) (explaining that, in reviewing a motion to dismiss based on qualified immunity, the trial court must "accept[] as true the facts alleged in the complaint and view[] them in the light most favorable to the plaintiff"). The undersigned therefore **FINDS** that—at least at this stage of the proceedings—qualified immunity does not bar Plaintiff's § 1983 claims against the Police Defendants for their alleged violation of the Fourth Amendment, and the Police Defendants' motion to dismiss on this basis (ECF No. 34) should be **DENIED**.

### B. *Section 1983 Claims Against Defendants in Their Official Capacities*

Next, both the Police Defendants and the Auditor Defendants seek dismissal of Plaintiff's § 1983 claims against them in their official capacities, as the operative Amended Complaint does not allege any "official acts" by the named Defendants. (ECF Nos. 34; 48.)

In support of their motions, the Defendants point out that, to the extent Plaintiff asserts § 1983 claims for money damages against them in their official capacities, dismissal is proper because Defendants are not a "person" subject to suit under 42 U.S.C. § 1983. (ECF Nos. 35 at 5; 49 at 4-5.)

"Obviously, state officials literally are persons[;] [b]ut a suit against a state official in his or her official capacity . . . is a suit against the official's office [and] [a]s such, it is no different from a suit against the state itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, as "the Eleventh Amendment bars a damages action against a State in federal court" absent waiver by the State or valid congressional override, a plaintiff is barred from suing State officials in their official capacities for money damages because "a judgment against a public servant in his official capacity imposes liability on the entity that he represents"—i.e., the State. *Kentucky v. Graham*, 473 U.S. 159, 168-69 (1985)). "An individual officer is therefore entitled to state sovereign immunity when sued in his official capacity." *Mealey v. Baltimore City Police Dep't*, 1:21-cv-2332, 2023 WL 2023262, at *18 (D. Md. Feb. 15, 2023).

Here, Defendants are correct that Plaintiff is barred from asserting § 1983 claims for money damages against them in their official capacities. *Will*, 491 U.S. at 71. However, in his Response memorandum in opposition to Defendants' motions, Plaintiff clarified that "the only claims" he is making against the Defendants "in their official capacities are ones for prospective relief"—ostensibly, the claims for injunctive and declaratory relief set forth in Count VI of the Amended Complaint. (ECF No. 53 at 16.) Unlike claims for money damages, "a state official in his or her official capacity, when sued for *injunctive* relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10 (citing *Graham*, 473 U.S.

at 165-66). As it is undisputed that Plaintiff's § 1983 claims for monetary damages set forth in Counts I, II, and III are alleged against the Defendants in their individual capacities only, the undersigned **FINDS** that Defendants' motions to dismiss any official-capacity claims from Counts I, II, and III of the Amended Complaint (ECF Nos. 34; 48) should be **GRANTED**.

Relatedly, both the Auditor Defendants and the Police Defendants also moved to dismiss Count VI of the Amended Complaint—which asserts a claim for non-monetary prospective relief against the Defendants in their official capacities—but on a different basis. The Police Defendants argued that Count VI fails to state a claim for prospective relief under Rule 12(b)(6) because it does not allege that there is an ongoing violation of federal law.[3] (ECF No. 35 at 13.) Echoing the Police Defendants, the Auditor Defendants similarly argued that Plaintiff lacked standing to seek an injunction, because his allegations are all "related to alleged past conduct," and a claim is not justiciable unless the plaintiff alleges "that he will be subject again to the challenged conduct." (ECF No. 49 at 5-6 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)).)

The Fourth Circuit explained in *Calloway* that, while "a plaintiff [may] maintain official-capacity claims for declaratory or prospective injunctive relief (as opposed to claims for damages) against state officials without offending the Eleventh Amendment," this limited exception "is true only where the plaintiff has sufficiently alleged an ongoing violation of federal law and seeks relief properly characterized as prospective." *Calloway*,

---

[3] The Police Defendants also sought to invoke *Younger* abstention on the grounds that Plaintiff Mr. Folse appealed the validity of the Kanawha County Magistrate Court's PSO to the Supreme Court of Appeals of West Virginia, and the appeal remained pending at the time this civil action was filed. (ECF No. 35 at 12-13.) As the Supreme Court of Appeals has since affirmed and dismissed Mr. Folse's appeal, however, and because the PSO expired pursuant to its own terms on August 20, 2022, this argument is now moot. (ECF Nos. 22-3; 56-1 at 3-4.)

2017 WL 4171393, at *7 (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997)). Here, Plaintiff did not dispute that the Fourth Circuit's "ongoing violation" requirement set forth in *Calloway* is the applicable standard. However, Plaintiff argued in his Response memorandum that the Amended Complaint *did* allege an ongoing violation. In support of this argument, Plaintiff pointed to the allegation that the Police Defendants instructed the Plaintiff he was not allowed in any buildings of the State Capitol Complex. (ECF No. 53 at 17.) Additionally, Plaintiff argued that his claim for prospective relief in Count VI was not intended "solely to attack the PSO but to challenge the Defendants' ongoing use of PSOs for an improper purpose according to the Defendants' ongoing practices." *Id.*

A review of the text, however, shows that the factual allegations in Plaintiff's Amended Complaint are not indicative of any such "ongoing use of PSOs." *Id.* Specifically, Plaintiff alleged that "Defendant Foreman told the Plaintiff on the day of the PSO hearing that [Plaintiff] was no longer allowed to enter any building in the capitol complex *because of the PSO.*" (ECF No. 32 at ¶ 143 (emphasis added).) By Plaintiff's own factual allegations, therefore, the Capitol Police cited the PSO as the basis for excluding Plaintiff from the capitol complex. Significantly, the PSO expired pursuant to its own terms on August 20, 2022. (ECF No. 22-3.) The Amended Complaint is devoid of any allegation that would indicate "Defendants' ongoing use of PSOs" as Plaintiff argued. (ECF No. 53 at 17.) There is only one PSO at issue, and it has expired; there are no allegations that any of the Defendants have sought—or even communicated an intent to seek—a second PSO, or that Plaintiff has been met with any subsequent resistance to—or interference with—his entry into the capitol complex. As Plaintiff has thus failed to allege that there is an ongoing violation of federal law, the undersigned **FINDS** that Defendants' motions to dismiss

Plaintiff's claim for prospective declaratory and/or injunctive relief in Count VI of the Amended Complaint (ECF Nos. 34; 48) should be **GRANTED**.

### C. *Plausibility of Plaintiff's* § 1983 *Claims* (Counts I, II, III)

Next, the Auditor Defendants and the Police Defendants seek dismissal of Plaintiff's § 1983 claims—as set forth in Counts I, II, and III of the Amended Complaint—under Rule 12(b)(6) against the named Defendants in their individual capacities, on the grounds that Plaintiff did not state a plausible claim for relief. (ECF Nos. 34; 50.) Generally, § 1983 provides a federal cause of action to recover damages for constitutional violations by officials acting under color of state law. 42 U.S.C. § 1983; *Schoonover v. Clay Cty. Sheriff's Dep't*, 2:19-cv-386, 2020 WL 2573243, at *3 (S.D. W. Va. May 21, 2020), *aff'd sub nom.*, 20-1680, 2023 WL 4026091 (4th Cir. June 15, 2023). The Supreme Court has been clear that § 1983 does not serve as a source of substantive rights itself, but rather provides a mechanism by which a plaintiff may "vindicat[e] federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Id.* (citing *Hernandez v. Mesa*, 140 S. Ct. 735, 747 (2010); *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979)). To bring a § 1983 claim, a plaintiff must allege sufficient facts to plausibly show that, taking the factual allegations as true, he or she was deprived of a constitutional right by the defendant acting under color of state law, and that the defendant was personally involved in causing the deprivation of the constitutional rights." *Schoonover*, 2023 WL 4026091, at *3 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)).

### a. *False Arrest*

Defendants argued that Plaintiff's § 1983 claim for false arrest in violation of the Fourth Amendment (Count I) should be dismissed because Plaintiff was arrested

pursuant to a warrant. (ECF Nos. 35; 51.) Both sets of the Defendants highlighted the "arms-length" nature of their role, explaining that Plaintiff's arrest was effected by other state actors (who are not a party to this action), pursuant to a warrant that was issued by a West Virginia Magistrate based upon that Magistrate's probable-cause determination. (ECF Nos. 35 at 8; 51 at 8-10.)

"A plaintiff's claim for false arrest ceases once plaintiff is detained pursuant to legal process, and at this point, becomes a claim of malicious prosecution." *Cruse v. Blackburn*, 3:17-cv-485, 2018 WL 793501 (S.D. W. Va. Jan. 16, 2018) (citation omitted).[4] The rationale for this change from a false-arrest claim to a malicious-prosecution claim is "[r]eflective of the fact that false imprisonment consists of detention without legal process," and therefore "a false imprisonment ends once the victim becomes held pursuant to such process[.]" *Jafary v. City of Beckley*, 5:20-cv-647, 2021 WL 1792139, at *4 (S.D. W. Va. May 5, 2021). Just as this Court found in *Jafary*, therefore, the fact that Plaintiff was arrested pursuant to legal process—a warrant signed by a Magistrate—causes Plaintiff's § 1983 claim for false arrest in Count I to "merge[] with [his] claim for malicious prosecution in Count II[I]." *Id.* at *4. Therefore, just as the Court found in *Jafary*, the undersigned **FINDS** that Plaintiff's claim for false arrest in Count I of the Amended Complaint is **MOOT** as it is merely duplicative of his claim for malicious prosecution in Count II under the circumstances. Accordingly, Defendants' motions to dismiss Plaintiff's

---

[4] Plaintiff appears to concede as much in his response memorandum. Therein, Plaintiff noted that the Auditor Defendants relied on *Brooks v. City of Winston-Salem*, 85 F.8d 178, 184 (4th Cir. 1996) in support of their argument that the Kanawha County Magistrate's finding of probable cause barred Plaintiff's malicious prosecution claim. (ECF Nos. 51 at 14 n.29; 53 at 13.) Addressing *Brooks* in relevant part, Plaintiff explained that *Brooks* "does not hold that a malicious prosecution claim is barred when a finding of probable cause is made but rather that *the claim is properly made as one of malicious prosecution as opposed to false arrest*," and therefore "allegations that an arrest made pursuant to a warrant was not supported by probable cause . . . [is] analogous to the common-law tort of malicious prosecution." (ECF No. 53 at 13 (emphasis added).)

claim for false arrest against the Police Defendants and the Auditor Defendants in their individual capacities as set forth in Count I of the Amended Complaint (ECF Nos. 34; 50) should be **GRANTED**.

####    b.  *Retaliatory Arrest/Prosecution*

Next, the Police Defendants and the Auditor Defendants both argued that Plaintiff's § 1983 claim for retaliatory arrest/prosecution in violation of the First Amendment (Count II)[5] should be dismissed due to the Kanawha County Magistrate's good-cause finding. (ECF Nos. 34; 50.)

The elements for a § 1983 claim based upon alleged retaliation in violation of the First Amendment are three-fold. First, the Plaintiff must demonstrate that he "engaged in protected First Amendment activity." *Snoeyenbos v. Curtis*, 439 F. Supp. 3d 719, 733 (E.D. Va. 2020) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). The second element requires the Plaintiff to demonstrate that Defendants "took some action that adversely affected [Plaintiff's] First Amendment rights." *Id.* The third and final element requires the Plaintiff to demonstrate that there was a sufficient "connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury" to establish "a causal relationship between [the Plaintiff's] protected activity and the Defendants' conduct." *Snoeyenbos*, 439 F. Supp. 3d at 733 (citing *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019)).

Here, Defendants did not challenge Plaintiff's Amended Complaint with respect to the first two elements of Plaintiff's First-Amendment retaliation claim in detail; instead, Defendants focused on the third element and argued that Plaintiff failed to provide

---

[5] For clarity, Plaintiff's claim in Count II is referred to herein as his First-Amendment retaliation claim.

"evidence" of the causal relationship between the Plaintiff's protected activity and the Defendants' conduct. In support of their position, the Defendants again highlighted that a neutral Magistrate found, first, that there was probable cause to enter a PSO, and, subsequently, that there was probable cause to arrest Plaintiff for violation of that PSO. (ECF Nos. 35 at 9; 51 at 10.) Based upon the Magistrate's probable-cause finding, the Police Defendants stated that "[t]here is no evidence in the Amended Complaint that Capitol Police Officer Looney or Director Foreman retaliated in any way against Plaintiff that impacted Plaintiff's free speech." (ECF No. 35 at 9.) Likewise, the Auditor Defendants echoed that "[t]here is no evidence that the named Defendants performed any retaliatory action," because Plaintiff's Amended Complaint "point[ed] to no act by these Defendants that interfered with," or affected, "the Plaintiff's Constitutional right to free speech." (ECF No. 51 at 11.)

Certainly, "[t]he presence of probable cause" is generally—but not always—sufficient to "defeat a First Amendment retaliatory arrest claim." *Nieves*, 139 S. Ct. at 1726. When—like Plaintiff alleges in the case at hand—"the official with the malicious motive does not carry out the retaliatory action himself [and] the decision to bring charges is instead made by a prosecutor," a plaintiff must show that the defendants' animus was the "but-for" cause of the harm to the plaintiff, such that the defendants "induced the action of a prosecutor who would not have pressed charges otherwise." *Id.* at 1723. Here, Plaintiff's Amended Complaint plainly alleged that the Defendants' alleged animus was the "but-for" cause of the Magistrate's issuance of the PSO and subsequent arrest warrant. Plaintiff alleged that the Magistrate's probable-cause finding supporting issuance of the arrest warrant was directly based upon Officer Looney's submission of the criminal complaint, which Plaintiff alleged "was without probable cause and brought as a

retaliatory action for the Plaintiff filing lawsuits [against McCuskey and Rollyson] and criticizing the State Auditor on Facebook." (ECF No. 32 at ¶ 60.) Plaintiff added that "[t]he criminal complaint authored by the Defendants includes numerous falsehoods, misrepresentations," and mischaracterizations that induced the Magistrate's decision. *See id.* Because the Court must construe Plaintiff's allegations of fact as true and view them in the light most favorable to Plaintiff at this threshold stage of the proceedings, the undersigned **FINDS** that Defendants' motions to dismiss Plaintiff's § 1983 First-Amendment retaliation claim against them in their individual capacities as set forth in Count II of the Amended Complaint (ECF Nos. 34; 50) should be **DENIED**.

c. *Malicious Prosecution*

Next, the Police Defendants and the Auditor Defendants both argued that Plaintiff's § 1983 claim for malicious prosecution in violation of the Fourth Amendment (Count III) should be dismissed. On their part, the Police Defendants essentially argued that the Amended Complaint lacked any "evidence" that "Officer Looney caused the Kanawha County Magistrate to find probable cause to issue the arrest warrant." (ECF No. 35 at 11.) In support of their argument, the Police Defendants stated their own factual contention that "Officer Looney presented a criminal complaint to the Magistrate based on a violation of a Personal Safety Order and his investigation of Plaintiff's criminal harassment[.]" *Id.* Based upon these contested facts, the Police Defendants asserted their legal conclusion that Officer Looney's actions "were based on probable cause," which according to the Police Defendants is supported by the fact that, subsequently, "[t]he Kanawha County Magistrate made a finding of probable cause based on that information and issued the warrant." *Id.*

The Auditor Defendants, in turn, echoed the Police Defendants' argument that there was no "evidence" of any act on their part to influence the outcome of the probable-cause hearing. (ECF No. 51 at 14-15.) The Auditor Defendants also relied on the undisputed fact that the Magistrate who issued the arrest warrant made a probable-cause determination. (ECF No. 51 at 14.) Relying on a case from the U.S. Court of Appeals for the Fourth Circuit, the Auditor Defendants argued that "a pretrial seizure," such as Plaintiff's arrest, is "rendered reasonable by virtue of a probable cause determination by a neutral and detached magistrate[.]" *Id.* (citing *Brooks v. City of Winston-Salem*, 85 F.8d 178, 181 (4th Cir. 1996)).

In this context, a § 1983 claim based upon an alleged violation of the Fourth Amendment prohibition against unreasonable seizures draws from elements of the common-law tort of malicious prosecution. *See Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). To state a plausible claim for relief, the complaint must allege that the Defendants "seized [him] pursuant to legal process that was not supported by probable cause and the criminal proceeding [must] have terminated in [his] favor." *Jafary*, 2021 WL 1792139, at *4-5 (quoting *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005)). It is generally true that "[a] decision by an independent intermediary, such as a neutral magistrate or a grand jury, as to the existence of probable cause has a significant impact on the question as to whether an officer was objectively reasonable in his belief that probable cause existed." *Jafary*, 2021 WL 1792139, at *5 (citing *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012)). "This protective effect, however, does not shield officers who have deliberately supplied misleading information that influenced the [magistrate's] decision." *Jafary*, 2021 WL 1792139, at *5 (citing *Durham*, 690 F.3d at 189; *Miller v. Prince George's Cty.*, 475 F.3d 621, 630 (4th Cir 2007) (explaining that officers are liable,

regardless of arrest warrant's existence, if the officers "intentionally lie in warrant affidavits, or recklessly include or exclude material information known to them")).

Defendants' arguments lack merit in light of this authority. Both the Police Defendants and the Auditor Defendants focused on the probable-cause determination by the magistrate, without acknowledging the highly-relevant nuance that the magistrate's probable-cause finding "does not shield officers who have deliberately supplied misleading information that influenced the decision." *Jafary*, 2021 WL 1792139, at *5. *See also Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988) ("An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant")). The Auditor Defendants asserted that "[t]here is no evidence that these Defendants caused the Kanawha County Magistrate to find that there was probable cause to issue the arrest warrant." (ECF No. 51 at 14.) This directly contradicts the allegation in Plaintiff's Amended Complaint that the Magistrate's probable-cause finding was directly based upon Officer Looney's submission of the criminal complaint, which Plaintiff alleged "was without probable cause and brought as a retaliatory action for the Plaintiff filing lawsuits [against McCuskey and Rollyson] and criticizing the State Auditor on Facebook." (ECF No. 32 at ¶ 60.) Plaintiff added that "[t]he criminal complaint authored by the Defendants includes numerous falsehoods and misrepresentations," including that Plaintiff made "repeated threats and harassment" to Rollyson, that the Plaintiff violated the PSO by criticizing Auditor McCuskey, who was not listed as a protected person on the PSO, and by misleadingly characterizing the Plaintiff's email communications as "harassing." Id. ¶ 80-82. Defendants' argument is therefore inchoate, as it depends upon a favorable finding that adopts Officer Looney's account of

the facts surrounding the arrest warrant, and rejects Plaintiff's account—a finding of fact that would be improper at this stage of the proceedings where the issue is the plausibility of Plaintiff's pleading—not the sufficiency of his proof.

Because the Court must construe Plaintiff's allegations of fact as true and view them in the light most favorable to Plaintiff at this threshold stage of the proceedings, the undersigned **FINDS** that Defendants' motions to dismiss Plaintiff's § 1983 claim for malicious prosecution against them in their individual capacities as set forth in Count III of the Amended Complaint (ECF Nos. 34; 50) should be **DENIED**.

### D.  *Plausibility of Plaintiff's State-Law Claims* (Counts IV, V)

Lastly, Defendants challenged Plaintiff's state-law claims for intentional infliction of emotional distress ("IIED") and economic damages, as set forth in Counts IV and V of the Amended Complaint, respectively.

#### a.  *Intentional Infliction of Emotional Distress*

Turning to Plaintiff's IIED claim, the Police Defendants and the Auditor Defendants both argued that dismissal pursuant to Rule 12(b)(6) is proper because Plaintiff failed to state a claim upon which relief may be granted. (ECF Nos. 34; 50.) According to the Police Defendants, Plaintiff's IIED claim "rel[ies] on the underlying alleged facts Plaintiff uses to support his § 1983 claims." (ECF No. 35 at 11.) The Police Defendants also argued Plaintiff's IIED claim is insufficient because it is "based on conclusory allegations that the named Defendants conspired to have him charged, arrested and imprisoned," without supporting factual allegations, and because "Plaintiff's allegations do not satisfy the elements necessary for a claim of [IIED]." *Id.* at 12. The Auditor Defendants echoed the same argument, and repeated their theme that they are

not liable because they did not personally arrest, charge, or detain Plaintiff. (ECF No. 51 at 15.)

In West Virginia, the tort for IIED permits a plaintiff to recover damages "for emotional distress arising out of extreme and outrageous conduct intentionally or recklessly caused by the defendant." *Baldwin v. Wells Fargo*, 3:16-cv-4841, 2017 WL 63026, at *3 (S.D. W. Va. Jan. 5, 2017) (citing *Harless v. First Nat'l Bank*, 289 S.E.2d 692, 703 (W. Va. 1982)). This is a high standard; to be found liable, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Baldwin*, 2017 WL 63026, at *3 (citing *Tanner v. Rite Aid*, 461 S.E.2d 149, 157 (W. Va. 1995)). A plaintiff must establish four elements to prevail on an IIED claim: (1) that the Defendant's conduct was atrocious and intolerable; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly; (3) that the plaintiff suffered emotional distress as a result; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Baldwin*, 2017 WL 63026, at *3 (citing *Travis v. Alcon Lab., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998)).

To the extent Defendants' argument is directed at the third and fourth elements of an IIED claim, this Court's decision in *Baldwin*, 2017 WL 63026, at *3, is instructive. In that case, the plaintiff's complaint was found to "sufficiently plead" the third and fourth elements of her IIED claim against a creditor based upon her allegations that the creditor's alleged misconduct caused the plaintiff to "have been annoyed, inconvenienced, harassed, bothered, upset, threatened . . . and w[as] otherwise caused indignation and distress," including emotional distress. *Id.* at *3. While it was a close call, the Court in *Baldwin* explained that these allegations provided "sufficient . . . detail and factual

support" to "plead[] a plausible claim for IIED." *Id*. However, the Court cautioned that while it would permit the plaintiff to progress through the threshold motions and pursue her claim, she would be expected "to meet the high standard for IIED by proving the outrageousness of [the defendant's] conduct and showing severe emotional distress through discovery." *Id*.

Here, Plaintiff's Amended Complaint provided even more detail and factual support than the complaint found to be sufficient in *Baldwin*. While the *Baldwin* plaintiff merely alleged generally that she suffered distress, in contrast Plaintiff's Amended Complaint alleged that Defendants' actions "caused the Plaintiff to suffer severe emotional distress," and then went on to provide supporting factual details describing the consequences of his arrest and how those consequences affected him. (ECF No. 32 at ¶¶ 117-125.) Likewise, Defendants' vague dismissal of Plaintiff's allegations as "conclusory" is overstated. As the undersigned noted previously, Plaintiff's Amended Complaint specifically alleged facts that could form the basis for the alleged conspiracy to "file for a personal safety order," and then to bring about Plaintiff's arrest "over a 'sham' criminal charge of violating a personal safety order," without probable cause, "in [a] 'retaliation plot' conjured up by the named Defendants" in response to Plaintiff's "First Amendment protected activities." Plaintiff's Amended Complaint is detailed and specific enough to notify the Defendants that they are alleged to have shared a conspiratorial objective—to file for a personal safety order against Plaintiff, and then to bring about Plaintiff's arrest over a sham criminal charge of violating the order—and that there was at least one overt act in furtherance of the conspiracy—Officer Looney's submission of a false criminal complaint to the Kanawha County Magistrate. (*See* ECF

No. 53 at 6.) In light of the Defendants' alleged knowing and intentional misconduct, Plaintiff has set forth a sufficiently plausible claim of IIED.

The Defendants' challenge that Plaintiff's IIED claim relies on the allegations in his underlying § 1983 claims, (*see* ECF Nos. 35 at 11; 51 at 15), is likewise unconvincing. In *Baldwin*, the defendant creditor argued that the plaintiff's IIED allegations merely "recite[d] earlier allegations that [the defendant] violated various provisions of the" consumer-protection statute at issue in a preceding claim. *Baldwin*, 2017 WL 63026, at *3. This Court rejected the defendant's argument, explaining that "if the complaint alleges sufficient factual allegations to support an IIED claim, the Court will not dismiss the claim for relying on the same factual allegations" as the preceding statutory claim. *Id.* For these same reasons, the Police Defendant's challenge that Plaintiff's § 1983 claims and IIED claims rely on the same set of factual allegations is largely irrelevant on this issue. While Plaintiff, like the plaintiff in *Baldwin*, will meet a high standard of proof moving forward, the undersigned **FINDS** that Plaintiff's Amended Complaint meets the requisite plausibility standard to adequately state an IIED claim; thus, Defendants' motions to dismiss Count IV of the Amended Complaint (ECF Nos. 34; 50) should be **DENIED**.

### b. *Economic Damages*

In support of their motions to dismiss Plaintiff's claim for economic damages set forth in Count V of the Amended Complaint, Defendants vaguely referenced their previous arguments that focused on the arms-length nature of their relationship to the PSO and arrest warrant, which were issued by a Kanawha County Magistrate, as well as their previous arguments that the Amended Complaint was conclusory, and their dispute with Plaintiff's factual allegations. (ECF Nos. 35 at 11-12; 51 at 15.) None of these arguments demonstrate that dismissal of the economic-damages claim; in fact, neither

the Police Defendants nor the Auditor Defendants even address the elements of a claim for economic damages under West Virginia law. As this Court has explained, "a district court does not assume the role of an advocate to construct arguments or theories for a *pro se* plaintiff"—let alone parties like the named Defendants in this action, who are all represented by counsel. *Siberius v. Am. Pub. Univ. Sys., Inc.*, 2:18-cv-1125, 2019 WL 4409714, at *1 (S.D. W. Va. Sept. 13, 2019), *aff'd*, 803 Fed. App'x 722 (4th Cir. 2020). *See also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (cautioning against "transform[ing] the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party"). In light of the foregoing, the undersigned **FINDS** that—at least at this early pleading stage of the litigation—Defendants have not met their burden to show that dismissal of Plaintiff's economic-damages claim is warranted. Thus, Defendants' motions to dismiss Count V of the Complaint (ECF Nos. 34; 50) should be **DENIED**.

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge order the following relief:

(1)    That the Police Defendants' motion to dismiss (ECF No. 34) be **GRANTED IN PART** and **DENIED IN PART**, such that:

a.    Plaintiff's § 1983 claims against the Police Defendants in their official capacities as set forth in Counts I, II, III, and VI of the Amended Complaint be **DISMISSED**;

b.    Plaintiff's § 1983 claim for false arrest against the Police Defendants in their individual capacities as set forth in Count

I of the Amended Complaint be **DISMISSED** as moot, having merged with the claim in Count III;

(2)     That the Auditor Defendants' first motion to dismiss (ECF No. 48) be **GRANTED**, such that Plaintiff's § 1983 claims against Defendants McCuskey, Rollyson, Hopkins, Connolly, and Nusbaum in their official capacities as set forth in Counts I, II, III, and VI of the Amended Complaint be **DISMISSED**;

(3)     That the Auditor Defendants' second motion to dismiss (ECF No. 50) be **GRANTED IN PART** and **DENIED IN PART**, such that Plaintiff's § 1983 claim for false arrest against the Auditor Defendants in their individual capacities as set forth in Count I of the Amended Complaint be **DISMISSED** as moot, having merged with the claim in Count III; and

(4)     That Plaintiff proceed with the prosecution of this civil action as to Counts II, III, IV, and V against the named Defendants in their individual capacities.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and

the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals.  *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing parties and Judge Copenhaver.

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation, transmit a copy to counsel of record via the Court's CM/ECF system, and mail a copy of the same to any *pro se* party at his or her address of record.

ENTER:        August 15, 2023

Dwane L. Tinsley
United States Magistrate Judge